PEOPLE'S BUILDING AND LOAN ASSOCIATION OF ATLANTIC CITY, NEW JERSEY, complainant-respondent,

*v.*

MAY M. OGDEN et al., defendants-appellants.

[Submitted February term, 1934. Decided May 4th, 1934.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Sooy, who filed the following opinion:

"Complainant has a decree *pro confesso* against the defendant May M. Ogden, and defendant having made application to open the decree in order that a defense might be submitted by way of an answer filed out of time, the court permitted the opening of the decree and the filing of the answer, with the proviso that the case proceed to final hearing on bill, answer and proofs forthwith, and such final hearing has been had.

"The only question for the court to determine is whether or not the complainant agreed with the defendant that if she executed and delivered to the complainant an assignment of the rents due and to grow due from the mortgaged premises that it, the complainant, would not foreclose its mortgage. It is not a question as to whether or not the assignment of rents was made and delivered, because it is admitted that such an assignment was made and delivered. The burden of sustaining the defense is on the defendant and the question is, has she, by the preponderance of the believable testimony, sustained the proposition that the complainant agreed not to foreclose its mortgage in consideration of the assignment? It is admitted that there were conversations between a Mr. Schwartz, representing complainant, and Mrs. Ogden and her son, as far back as January of this year, and it is beyond question that Schwartz called the Ogdens' attention to the arrearages on the building and loan mortgage and advised them that foreclosure was imminent.

"It is also admitted that in February, prior to the execution of the assignment by the Ogdens, that they, Mrs. Ogden and her son, had a consultation at the building and loan office, at which time Mr. Ford, Mr. Schwartz and Mr. Butler, representing the association, were present, and Mrs. Ogden and her son were also present. What happened at this meeting is the subject of a divergence in the testimony given by the complainant's witnesses and the defendants. It is insisted by all of complainant's witnesses that Mrs. Ogden was advised that foreclosure proceedings would be instituted unless an assignment of rents was executed, and that a blank form of such an assignment was presented for the consideration

of Mrs. Ogden and her son; that this blank was so presented is admitted by both of the Ogdens. Complainant's witnesses say that Mr. Ogden, in the presence of his mother, after looking over the blank assignment, objected to certain of its provisions, among others being that provision which referred to foreclosure, which reads as follows:

" 'And the said May M. Ogden shall be required to pay said advance or advances, together with interest thereon, as a part of the mortgage debt, and in the event of the foreclosure of said mortgage, or any proceedings on the bond therefore, the sum of said advance or advances shall be added to and collected in said foreclosure or other proceeding.'

"Complainant's witnesses say that Mr. Ogden asked that this provision touching on foreclosure be eliminated, and that he, in the presence of his mother, was advised that under no circumstances would it be eliminated.

"After this conversation, the Ogdens admit that they were present in the office of Mr. Butler, representing the complainant, and Mr. Butler says that at that conference he again advised the Ogdens that under no circumstances would the Association agree not to foreclose their mortgage. The Ogdens denied this and Schwartz confirmed it.

"The affirmative defense alleged by the Ogdens to the effect that the Building and Loan Association agreed not to foreclose the mortgage in consideration of the assignment of rents is based on testimony as to what happened, not at the office of the association, nor at the office of Mr. Butler, but from testimony as to a conversation which they say occurred between Schwartz, for the Building and Loan Association, and Mr. and Mrs. Ogden, Sr., and Mr. Ogden, Jr., and his wife. This conversation was alleged to have taken place at the office of the defendants, on the mortgaged premises, and all of the Ogdens say that Schwartz positively promised that the Building and Loan Association would not foreclose its mortgage upon the execution of the assignment aforesaid, and they say that Schwartz said at that meeting that the Building and Loan Association would not change the language of the assignment to eliminate the reference

to foreclosure because the lawyers for the association had drawn the agreement and if there was a change it would have to be resubmitted at a meeting of the board of directors of the association.

"If defendants' defense is to be accepted as being that which actually happened, I must find that Schwartz, representing the association, agreed for it that the association would never foreclose its mortgage but that it would be content to receive the rents from the apartment house property and apply them to its indebtedness, irrespective of whether or not such rents would eventually liquidate defendants' indebtedness, and it appears from the evidence that liquidation of the debt by application of the rents would be an impossibility, inasmuch as the rents were not sufficient to carry the loan, interest and expenses of the operation of the apartment house.

"I would have to go further than this and find from the evidence that Schwartz was either duly authorized by proper action of the board of directors of the association to make such an agreement with the defendants, or that he was held out by the complainant as having that authority, or that the complainant ratified such an agreement after it was made.

"The defendants themselves admit that Schwartz had advised them that he had no authority to change the language of the assignment and that if it was changed it would have to go back to the board of directors. They, therefore, knew that they were dealing with someone of limited authority, and they must have realized that authority to enter into such an agreement as they contend was made was a very broad and extensive authority.

"All of the witnesses for the complainant testified that in discussing the question of the execution of the agreement for assignment of rents that they said the matter would be referred to the board of directors for final action, and this is not denied by the Ogdens, so that it would seem to me that I could not find from the evidence that Schwartz was authorized to make the agreement contended for by the defendants, nor can I find from the evidence that the asso-

ciation held Schwartz out as having any such authority, and there is no evidence that the association ever had brought to its attention any such agreement nor did they ever ratify any such agreement.

"The probabilities of such an agreement as contended for ever having been made are against the defendants, first, because of what has been said before, *i. e.,* that foreclosure would be forever postponed, by reason of the inadequacy of the rents, and secondly, because it is impossible to believe that Mr. Butler and Mr. Ford did not definitely advise the defendant and her son that the association would never agree to forfeit its right to foreclose, and they gave that advice to Mrs. Ogden in the presence of Mr. Schwartz, and if, having had that advice forcibly expressed, as it was by both Mr. Butler and Mr. Ford, Mr. Schwartz had subsequently advised them that the association would forego its right to foreclose, it seems to me that the natural thing for the Ogdens to have done would have been to discuss with Schwartz not only the question of his authority to make such an agreement, but that something would have been said as to why the officers of the association had so radically changed their views.

"I have no doubt but that in the various discussions with reference to the execution of the assignment of rents that the Ogdens were advised that unless they did assign the rents, foreclosure would be immediately started, and it may well be that their thought was that if they did assign the rents, foreclosure would be withheld, but their hope and expectation with reference to withholding foreclosure is not sufficient to justify the court finding an express contract on the part of the association that they would not foreclose.

"If the association had agreed not to foreclose, why did it provide in the assignment of rents that which would happen 'in the event of foreclosure of said mortgage?' It seems to me that the incorporation of this language in the agreement repudiates the contention that an agreement not to foreclose was made.

"The assignment of the rent agreement was dated February 7th, 1933, and was submitted to the board of directors at a

meeting on February 10th, 1933, and at that time the difficulties which had been encountered by Mr. Schwartz in his dealings with the Ogdens were reported to the board and the board instructed the solicitor of the association to institute foreclosure proceedings 'unless the owners agree to co-operate more fully with Director Schwartz in this matter.' There never was any further co-operation as between the Ogdens and Schwartz and dissensions had arisen as to what apartments were to be included as those from which the rents should be collected. There was also dissension as to the payment of bills and in that situation the solicitors of complainant started its foreclosure proceedings and served notice on the tenants of the default on the part of the Ogdens and of its purpose to proceed with the collection of rents thereafter, and has collected the rents ever since.

"It seems to me to make no difference whether the association returned the assignment agreement to the Ogdens or not. They did not return it nor did they return the keys what the Ogdens had delivered to them at or about the time of the execution of the assignment, but they fortified their position as mortgagees by attempting to take possession through notice, and whether they had possession through this notice or through the assignment makes no difference and does not assist in determining the fundamental question to wit: Was there an agreement not to foreclose in consideration of the execution of the assignment? I find there was not, and will advise a decree for complainant."

*Mr. Emerson L. Richards* and *Mr. John C. Reed,* for the appellants.

*Messrs. Moore & Buller,* for the respondent.

PER CURIAM.

expressed in the opinion delivered by Vice-Chancellor Sooy in the court of chancery.

The decree appealed from will be affirmed, for the reasons

*For affirmance*—The Chief-Justice, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Heher, Perskie, Van Buskirk, Kays, Hetfield, Dear, Wells, Dill, JJ.   15.

*For reversal*—None.